IN THE MATTER OF FREDERIC C. RITGER, JR., AN
ATTORNEY-AT-LAW.

Argued March 14, 1989—Decided May 5, 1989.

*John J. Janasie,* Deputy Ethics Counsel, argued the cause on behalf of the Office of Attorney Ethics.

*Frederic C. Ritger, Jr.* argued the cause *pro se.*

PER CURIAM.

Respondent, Frederic C. Ritger, Jr., is before the Court on charges of ethical improprieties in his handling of a decedent's estate. Specifically, he is charged with having given misinformation to his client, the administratrix of the estate, and with having failed to keep her informed. The District Ethics Com-

mittee (the Committee), having concluded that respondent had misrepresented the status of the estate matter, had failed to keep his client reasonably informed, and had engaged in a pattern of neglect, recommended that respondent be issued a private reprimand. The Disciplinary Review Board (DRB) treated the recommendation as a presentment and determined that the evidence clearly and convincingly established Ritger's unethical conduct. The DRB disagreed, however, with the Committee on the extent of discipline to be imposed. The DRB's recommendation to this Court is for a one-year suspension from the practice of law. We conclude that the appropriate discipline is a six-months suspension.

I

Complainant, Mary Lee Ward, is the administratrix of the estate of her late brother, James Glover, a/k/a William Johnson. In 1972 Glover and his common-law wife, Janet Johnson, purchased residential property in Harrisburg, Pennsylvania. At the time the Harrisburg property was purchased, it appeared that Ms. Johnson may still have been married to one Mayfield Thomas, whom she married in 1939 and from whom she became separated in 1954. When complainant's brother, Glover, died in East Orange in 1981, there immediately arose questions about the nature and extent of his interest in the Harrisburg property.

In August 1981, Ms. Ward retained the Newark law form of Franzblau & Falkin as counsel, by way of referral from one Charles Koosman, a New York lawyer, who had long been Ms. Ward's personal attorney. The essential legal issue confronting counsel in the winding-up of the estate was whether, assuming Janet Johnson was not free to marry the decedent on account of her still-surviving marriage, the Harrisburg property was then held by Mr. Glover and Ms. Johnson as tenants in common, and if so, whether Mr. Glover's estate was entitled to one-half interest in the value of the property. It was thus

necessary to determine Ms. Johnson's marital status when the Harrisburg property was acquired and the effect of that status on the property's title. As later developed, Ms. Johnson had not been lawfully divorced from Mr. Thomas as of February 1982.

When the estate matter came to the firm, it was assigned to respondent. It became his opinion, as well as that of other attorneys including Pennsylvania counsel with whom he consulted, that it might be advisable to proceed by way of an action to quiet title in Pennsylvania. Were that course successful, the estate would be declared a tenant in common and its value would be augmented by one-half the value of the Harrisburg property. It was respondent's efforts, or lack thereof, in connection with that property that occasioned the ethics complaint and these proceedings.

## II

Given the facts that are either admitted by respondent or, where not specifically admitted, otherwise established by clear and convincing proof, we need not engage in close analysis of the evidence in order to conclude that respondent's ethical derelictions are painfully apparent. For purposes of this opinion it is sufficient to recite the following events.

Respondent recognized the need for expedition either in starting suit in Pennsylvania to protect the estate's assets or potential assets, or in engaging Pennsylvania counsel to do so. He did neither. Moreover, in letters to Ms. Ward he misrepresented the status of his efforts, thereby lulling her into a false sense of security.

A year after complainant's New York personal attorney had forwarded the case to Messrs. Franzblau & Falkin, the attorney wrote to Mr. Franzblau to request that because of a personality difference between Ritger and Ms. Ward, respondent be removed from the case and Franzblau assume full responsibility. Two days later Ms. Ward herself wrote to complain of lack of

progress and delays in the handling of her brother's estate, which she perceived as having caused depreciation of the estate's holdings and consequent loss to the estate. Despite these entreaties respondent continued to bear responsibility for the estate and to ignore that responsibility.

Specifically, respondent failed to pursue settlement opportunities, failed to follow-up with a Pennsylvania attorney who was willing to institute suit on the estate's behalf, and failed to engage Pennsylvania counsel to seek a portion of the proceeds of sale of the property after it had been "sold out from under" the estate (even after complainant had warned of the "for sale" status of the property and had been reassured that the estate's interest would be protected) and after Ms. Ward had urged respondent to address the matter with all haste before Ms. Johnson took off with the proceeds of sale. Compounding his inactivity was respondent's resort to letters to keep the client at bay: (a) to the complainant's mother, sole beneficiary of the estate, explaining that delays in closing the estate should be anticipated because of "the pending litigation in Pennsylvania" (there was none, either when the letter was written in January 1983 or at any other time); (b) to Ms. Ward in April 1983, again referring to "pending" litigation in Pennsylvania that should receive a trial date for "some time in May"; (c) to Ms. Ward on May 19, 1984, expressing his intention to visit "our forwarding counsel" (there was none) within the following week; (d) to Ms. Ward on May 18, 1984, explaining that he had been unable to go to Harrisburg but would do so "next Wednesday" and report to her on his return. Each of the letters was false and misleading. Respondent acknowledged that his intention was "to indicate to [complainant] that there was something going on in Pennsylvania."

On the basis of the foregoing the Committee found a continuing pattern of neglect, as well as misrepresentation with the purpose of lulling the client into a false sense of security that the estate was receiving proper attention. The Committee observed that in accordance with a prior order of this Court, see

*In re Ritger*, 80 *N.J.* 1 (1979), respondent was limited "to working in a partnership with, or for and under the supervision of, other attorneys," *id.* at 5, but that the record was "unclear" on the exact employment arrangement between respondent and Franzblau & Falkin: he did not "take on clients at the firm," but worked "on a per diem basis" and made court appearances on the firm's behalf, despite all of which his name appeared on the firm's letterhead. The Committee expressed some concern about the level and efficacy of the firm's supervision of Ritger's daily professional activities.

Although the DRB agreed that the record fully supported a finding that respondent had committed ethical infractions, there was disagreement with the Committee's conclusion that the circumstances called for a private reprimand. The DRB was impressed with "the absence of any mitigating factors" and of any reasonable explanation for respondent's unethical conduct. It cited respondent's lack of contrition, his confession of being "irritated with grievant for her requests to determine the status of the matter" and of having dissembled in order to get complainant "off [his] back." Referring to our previous order that respondent be supervised by other attorneys, the DRB concluded that "[i]n light of the events [that] constitute the subject matter of these proceedings, it is clear that respondent ignored the Court's mandate, "wherefore it recommended a one-year suspension."

### III

Our independent review of the record leads us to conclude, as did the DRB, that the ethical infractions recited above have been established by clear and convincing proof. However, we are troubled by the DRB's conclusions about respondent himself: the absence of contrition, the lack of mitigating factors, and his failure to be supervised by other attorneys. Respondent's contrition was unmistakable on the occasion of his appearance before this Court—his ready, straightforward ac-

knowledgement of his mishandling of the estate, his obvious regret at the consequences. We do not read the record of the proceedings below as disclosing any different attitude on respondent's part, nor are we willing to conclude that respondent was simply attempting to remedy a perceived deficiency in his appearance before the DRB. As far as mitigating factors are concerned, one might not be impressed with "press of other business" as justification for the type of conduct in which respondent engaged. And we are not so impressed. But the fact remains that respondent, a trial lawyer of thirty-eight years experience, was coping with a heavy, active trial calendar during much of the time that the events involved in these proceedings were pressing in on him.

Which brings us to the DRB's third point—respondent's failure to be supervised. We are left with the impression that respondent—heavy trial calendar or no—did not move with complete ease or confidence in the area of estate law. His professional life had been spent for the most part in the courtroom. He testified before the Committee that he "inherited" the Ward file after being asked to "go up and take care of" a hearing on the case. If in fact respondent was given responsibilities in the discharge of which he was not comfortable, then there was all the more reason for close supervision of his performance.

We wish not to be unfair to the firm. Its members did not testify in these proceedings, and the record does not fully disclose what efforts were made to oversee Mr. Ritger's work. We think, however, that the DRB's conclusion that respondent failed to abide by the Court's earlier mandate that he be supervised may be the product of a too-narrow focus. For today's purposes it is sufficient that we express our sense of unease over the extent to which the supervising firm carried out its end of the arrangement. The occasion affords us the opportunity to remind the bar that when lawyers take on the significant burdens of overseeing the work of other lawyers, more is required than that the supervisor simply be "available."

*Cf. In re Barry,* 90 *N.J.* 286, 293 (1982) (dissenting opinion) (pointing up the need for a systematic, organized routine for periodic review of files).

We are satisfied that the circumstances before us call for public discipline. Ritger was charged with the professional handling of the estate's affairs. He failed in that regard, and he misled the client. He will be suspended from the practice of law for six months and until the further order of the Court. In addition, respondent is ordered to reimburse the Ethics Financial Committee for appropriate administrative costs.

So ordered.

*For suspension*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, O'HERN, GARIBALDI and STEIN—6.

*Opposed*—None.

### ORDER

It is ORDERED that FREDERIC C. RITGER, JR. of NEWARK, who was admitted to the bar of this State in 1950, be suspended from the practice of law for a period of six months effective May 29, 1989, and until the further order of this Court; and it is further

ORDERED that FREDERIC C. RITGER, JR. reimburse the Ethics Financial Committee for appropriate administrative costs; and it is further

ORDERED that FREDERIC C. RITGER, JR. be restrained and enjoined from practicing law during the period of his suspension; and it is further

ORDERED that FREDERIC C. RITGER, JR. comply with Administrative Guideline Number 23 of the Office of Attorney Ethics dealing with suspended, disbarred or resigned attorneys.